## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**JOSE DANIEL GARCIA,**          :
                                 :
    **Plaintiff,**         :
                                 :
    **v.**                :          **CIVIL ACTION FILE NO.**
                                 :          **1:14-CV-00974-AJB**
**CAROLYN W. COLVIN,**           :
*Acting Commissioner*            :
*of Social Security,*            :
                                 :
    **Defendant.**        :

# O R D E R   A N D   O P I N I O N[1]

Plaintiff Jose Daniel Garcia ("Plaintiff") brought this action pursuant to sections

205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), to

obtain judicial review of the final decision of the Acting Commissioner of the Social

Security Administration ("the Commissioner") denying his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under

---

[1]      The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. [*See* Dkt. Entries dated 4/10/2014 and 4/11/2014]. Therefore, this Order constitutes a final Order of the Court.

the Social Security Act.[2]  For the reasons below, the undersigned **AFFIRMS** the final

decision of the Commissioner.

I.     **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 24, 2012 and an application for

SSI on December 14, 2011, alleging disability commencing on July 25, 2010.  [Record

(hereinafter "R") 85, 86, 98, 99].  Plaintiff's applications were denied initially and on

reconsideration.  [R111, 112, 146, 147].  Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on

November 29, 2012.  [R47-84].  The ALJ issued a decision on October 21, 2013,

finding that Plaintiff was not disabled.  [R16-31].  Plaintiff sought review by the

---

[2]     Title II of the Social Security Act provides for federal Disability Insurance Benefits.  42 U.S.C. § 401 *et seq*.  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.  *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

Appeals Council, and the Appeals Council denied Plaintiff's request for review on February 11, 2014, making the ALJ's decision the final decision of the Commissioner. [R2-7].

Plaintiff then filed an action in this Court on April 2, 2014, seeking review of the Commissioner's decision. [*See* Docs.1, 3]. The answer and transcript were filed on August 6, 2014. [Docs. 7-8]. On September 9, 2014, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 11], and on October 8, 2014, the Commissioner filed a response in support of the decision, [Doc. 12]. Plaintiff did not file a reply brief and the parties agreed to waive oral argument. [*See* Dkt.; Dkt. Entry dated 4/16/15]. The matter is now before the Court upon the administrative record and the parties' pleadings and briefs and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

AO 72A
(Rev.8/8
2)

## II.    STATEMENT OF FACTS[3]

### A.    Background

Plaintiff was 44 years old on the alleged onset date of disability.  [R85].  Plaintiff has a high school education, [R51, 96],[4] and past relevant work as a greens keeper, landscape specialist, salad maker, golf cart handler, and sales representative.  [R77].  Plaintiff alleges disability due to hepatitis C, post traumatic stress disorder ("PTSD"), asthma, thoracic aortic aneurysm, bipolar disorder with a history of hypomania, thrombocytopenia, rhabdomyolysis, splenomegaly, hematochezia, and hypokalemia.  [R85-86, 98-99].

### B.    Medical Records

In November 2002, Plaintiff had a right tibia plateau fracture (fracture in the right knee) which required surgery.  [R1119-20].  Plaintiff continued to have right knee pain and swelling.  [R1040].  A x-ray of the right knee in March 2010 revealed that Plaintiff was status post open reduction internal fixation with screws across the medial

---

[3]    The records referenced in this section are those deemed by the parties to be relevant to this appeal.  [*See* Docs. 11, 12].

[4]    Plaintiff completed his GED.  [*Id.*].

and lateral tibial plateau and joint effusion with possible loose bodies overlying the superior aspect of the bursa. [*Id*.].

In July 2010, Plaintiff presented to the emergency room at North DeKalb Medical Center with complaints of chest pain. [R1252]. Plaintiff reported that he lost his job and had been off his blood pressure medications for the past two months. [*Id*.]. He denied any visual loss. [*Id*.]. Plaintiff was treated with nitroglycerin and aspirin which resolved his elevated blood pressure, and was told that it was necessary for him to restart his medications. [R1253]. Plaintiff returned to the emergency room in September 2010 with complaints of elevated blood pressure. [R1260]. On that occasion, Plaintiff tested positive for marijuana. [R1260]. After being treated with medication, Plaintiff's blood pressure readings improved. [R1262]. Plaintiff also was treated with medication for wheezing due to bronchitis. [R1262].

In October 2010, Plaintiff returned to the North DeKalb emergency room, and was found to have an accelerated hypertension and an aortic aneurysm. [R1264]. The notes state that Plaintiff had poor compliance with medication, did multiple drugs, was a poor historian and not cooperative. [*Id*.]. Counseling for drug use was recommended. [R1265].

5

In November 2011, Plaintiff was treated at Piedmont Hospital's emergency room for chest pain and hypertension. [R384]. There was initial difficulty in trying to control Plaintiff's blood pressure, but eventually it improved within 24 hours. [*Id*.]. His thoracic aneurysm was reevaluated, and no dissection or leakage was found. [*Id*]. Plaintiff also developed an episode of painless hematochezia[5] which was better with medication. [*Id*.]. Plaintiff also underwent a left heart catheterization which resulted in normal findings. [*Id*.]. Plaintiff reported smoking marijuana regularly. [R387].

In February 2012, lumbar spine images revealed degenerative disc disease at C5-C6 and C6-C7. [R540]. Also in February 2012, Dianne Bennett-Johnson, M.D., performed a consultative examination. [R396]. Dr. Bennett-Johnson noted that Plaintiff's hypertension is currently uncontrolled with a history of thoracic aneurysm, which has a potential for rupture since blood pressure is untreated. [R398]. Dr. Bennett-Johnson also noted that Plaintiff has a history of hepatitis C without signs of end-stage liver dysfunction. [*Id*.]. She diagnosed Plaintiff with depression, history of posttraumatic stress, uncontrolled and untreated hypertension, multiple aches, rectal bleeding, history of hepatitis C and thoracic aortic aneurysm. [*Id*.].

---

[5]      Hematochezia is the passage of blood in the feces. Merriam-Webster Medical Dictionary, http://www.merriam-webster.com/medlineplus/hematochezia (last visited 9/14/2015).

6

AO 72A
(Rev.8/8
2)

In April 2012, Plaintiff presented with a fever and right-sided flank pain and was positive for Murphy's sign.[6]  [R403].  No aortic aneurysm was identified in an aortic ultrasound.  [R547].

On April 30, 2012, Stephen Hamby, Ph.D., performed a psychological evaluation and opined that

> [Plaintiff] would be able to understand, remember and carry out simple instructions.  He would be able to sustain his attention in order to complete simple tasks.  He would be expected to continue to have moderate difficulty relating to supervisors and coworkers. [Plaintiff] would be at mild to moderate risk for psychiatric decompensation under stressful work conditions.

> [Plaintiff]'s mental condition would be expected to improve if he received mental health treatment, including a psychiatric evaluation for appropriate psychotropic medication.  Additional improvement would be expected to occur if he permanently and completely stopped all use of marijuana.

[R414].

---

[6]  Murphy's sign is a test for gallbladder disease in which the patient is asked to inhale while the examiner's fingers are hooked under the liver border at the bottom of the rib cage.  The inspiration causes the gallbladder to descend onto the fingers, producing pain if the gallbladder is inflamed.  Deep inspiration can be very much limited.  *Mosby's Medical Dictionary* (8th ed 2009).

7

In December 2012, Plaintiff began treatment at Saint Joseph's Mercy Care Services for behavioral health treatment and treatment of his blood pressure. [R1150, 1154]. He was initially diagnosed with severe depression. [R1155].

In July 2013, Plaintiff received treatment from Lorraine Anderson Stevens, LPC, at Newport Integrated Behavioral Healthcare, Inc. [R1337-42]. Plaintiff presented with symptoms of depression including insomnia, no appetite and feelings of sadness. [R1338]. It was noted that Plaintiff experienced symptoms of PTSD including flashbacks from his abusive childhood. [*Id*]. Plaintiff also reported thoughts of suicide, but denied any intent to harm himself. [R1340]. Plaintiff reported that he smoked marijuana daily and did LSD which helps his paranoia. [R1338]. He indicated that he was not addicted to marijuana and did not want to stop using it. [*Id*.]. Plaintiff was diagnosed with PTSD, Major Depressive Disorder, recurrent with Psychotic Features, and high blood pressure. [R1342].

### C.    Evidentiary Hearing Testimony

At the hearing before the ALJ, Plaintiff testified that it was difficult to work because his knee would swell like a baseball. [R53-54]. He further testified that his memory was not that good. [R55]. He also testified to being abused in foster care as a child. [R59].

8

Plaintiff testified that he cannot see due to high blood pressure and his feet are starting to swell. [R61]. After being questioned about being able to drive, he testified that he cannot see up close to read, but can see things that are far away, like signs. [R61-62]. He did not prepare any meals nor wash dishes, go shopping or have hobbies, but accompanies people that do shop. [R62-63]. Plaintiff further testified that he has difficulty sleeping because of the medication and due to worry. [R63].

He stated that he can only stand for about five minutes before he gets sore due to a broken bone in his knee. [R64]. He can sit for an hour before his legs start to hurt due to sciatica. [*Id.*].

Plaintiff's attorney at the hearing reported to the ALJ that Plaintiff suffers from a number of severe impairments, many of which stemmed from Plaintiff's hypertension. [R66]. Although recognizing that the medical records indicated that there were issues of noncompliance with the medication, counsel proffered that noncompliance was due to Plaintiff's inability to pay for medications and side effects of the medications. [*Id.*]. The attorney stated that the hypertension medications do not work and side effects have been significant in causing other conditions, such as excessive drowsiness. [*Id.*]. The attorney further stated that Plaintiff's issues with bone spurs and degenerative disc disease caused some physical limitations, which were

9

exacerbated due to obesity. [*Id.*]. The attorney stated that Plaintiff's combination of physical and mental impairments rendered him disabled and noted that the record indicates Plaintiff has bipolar disorder, schizophrenia, possible PTSD, and depression. [R67]. The attorney also noted that Plaintiff has been diagnosed with rhabdomyolysis.[7] [*Id.*]. He also argued that any substance abuse is separate and apart from his physical and mental impairments. [R67-68].

Plaintiff testified that he no longer uses marijuana and stopped two or three weeks prior to the hearing. [R68]. Plaintiff also testified that when he did use marijuana, it would only be socially, and not everyday. [R69]. He testified that he experimented with LSD for depression about six times, the last time being two or three months prior to the hearing. [R69-70]. He further testified that when he was 20 years old, he tried heroin and hated it; he also took Oxycodone prescribed by his doctor but hated the way it made him feel. [R70].

Plaintiff also testified that he receives mental health treatment from St. Joseph's and has just started treatment at Newport Mental Health. [*Id.*]. Plaintiff testified that

---

[7]     Rhabdomyolysis is the breakdown of muscle tissue that leads to the release of muscle fiber contents into the blood. These substances are harmful to the kidney and often cause kidney damage. MedLinePlus Medical Dictionary, https://www.nlm.nih.gov/medlineplus/ency/article/000473.htm (last visited 09/14/2015).

AO 72A
(Rev.8/8
2)

he is being evaluated mainly for suicide because he thinks about suicide almost daily. [*Id*.].

Plaintiff also testified that his previous jobs did not end well because he has trouble with people in that he gets irritated quickly and cannot handle conflict resolutions.  [R71-72].

In terms of pain, Plaintiff testified that while he was sitting at the hearing, his neck was going numb and his fingertips were kind of cold, which occurs daily to the point where he could not really do anything.  [R72-73].  Plaintiff also testified that his medication made him sleepy, caused him to choke, and made him think about suicide. [R72, 73-74].

The vocational expert ("VE") testified that a hypothetical person with Plaintiff's education and previous work experience, who could perform work at all exertional levels with the following limitations – understand, remember and carry out simple instructions, get along with co-workers, the public and supervisors; and can adapt to change in the work setting provided change is introduced gradually – could return to his past work of a landscape specialist or a port (golf cart handler).  [R77-78].

The VE then testified that a hypothetical person with Plaintiff's education and previous work experience, who could only perform work at the light level with the

11

AO 72A
(Rev.8/8
2)

following limitations – no more than occasional climbing and no climbing of ladders, ropes and scaffolds; avoid concentrated exposure to extreme cold and hazards such as machinery, heights, etc.; understand, remember, and carry out simple instructions; limited to no more than occasional contact with the public, co-workers and supervisors; and can adapt to change in the work setting provided change is introduced gradually – could not return to his past relevant work, but there would be other jobs that the person could perform such as laundry sorter, housekeeping cleaner, and ticket seller. [R78-79].

The VE then testified that a hypothetical person with the same limitations as the second hypothetical but with a sit/stand option at will throughout the workday, could perform the job of ticket seller and booth cashier.  [R79-80].

The VE also testified that at the sedentary level, a person with the same limitations as in the two previous hypotheticals could perform a surveillance system monitor job. [R80].  However, if the person were off task in excess of twenty per cent of the workday, that person could not work.  [*Id*.].  The VE opined that such a person could perform a surveillance system monitor job, even with additional restrictions posed by Plaintiff's attorney's hypotheticals.  [R81-82].

12

### III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2.   The claimant has not engaged in substantial gainful activity since July 25, 2010, the alleged onset date (20 CFR 404.1520(b), 20 CFR 404.1571 *et seq.*, 416.920(b) and 416.971 et seq.).

3.   The claimant has the following severe impairments: depressive disorder, NOS; cannabis dependence; essential hypertension; and status post right knee fracture with surgical repair and hardware placement (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), and 416.920(d)).

. . .

5.   After careful consideration of the entire record, the undersigned finds, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except with no more than occasional climbing; he is limited to no climbing with respect to ladders, ropes, or scaffolds; he must exercise a

sit/stand option at will throughout the workday; he is to avoid concentrated exposure to extreme cold and hazards such as machinery, heights, and similar circumstances; he can understand, remember, and carry out simple instructions; he is limited to no more than occasional contact with co-workers, the public, and supervisors; he can adapt to change in the work setting provided change is introduced gradually; and he would tend to be off task and unable to function for about twenty percent of the workday.

. . .

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.   The claimant was born on December 10, 1965 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

14

. . .

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore the claimant would continue to have a severe impairment or combination of impairments.

. . .

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), and 416.920(d)).

. . .

13. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except with no more than occasional climbing; he is limited to no climbing with respect to ladders, ropes, or scaffolds; he must exercise a sit/stand option at will throughout the workday; he is to avoid concentrated exposure to extreme cold and hazards such as machinery, heights, and similar circumstances; he can understand, remember, and carry out simple instructions; he is limited to no more than occasional contact with co-workers, the public, and supervisors; and he can adapt to change in the work setting provided change is introduced gradually.

. . .

15

14. If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

. . .

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

. . .

17. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

[R16-31].

16

In support of the decision, the ALJ first discussed Plaintiff's medically determinable impairments.  [R19-20].  The ALJ noted that the medical records indicate that Plaintiff was diagnosed with asthma, however, there is no indication that Plaintiff suffers more than minimal functional limitations due to this impairment.  [R19].  The ALJ determined that the following impairments were non-severe: obesity, hepatitis C, rhabdomyolysis, splenomegaly,[8] hematochezia, hypokalemia,[9] thrombocytopenia,[10] and thoracic aortic aneurysm.  [*Id*.].  The ALJ further discussed Plaintiff's allegations of posttraumatic stress disorder ("PTSD") and bipolar disorder with history of hypomania, however the ALJ did not find these to be medically determinable impairments as the record does not include a formal diagnosis of these impairments, Plaintiff is not on any

---

[8]     Splenomegaly is a larger-than-normal spleen.  MedLinePlus Medical Encyclopedia,  https://www.nlm.nih.gov/medlineplus/ency/article/003276.htm  (last visited 09/14/2015).

[9]     Hypokalemia is when the amount of potassium in the blood is lower than normal.  MedLinePlus Medical Encyclopedia, https://www.nlm.nih.gov/medlineplus/ency/article/000479.htm  (last   visited 09/14/2015).

[10]     Thrombocytopenia is a condition in which blood has a lower than normal number of blood cell fragments called platelets.  NIH National Heart, Lung and Blood Institute,  http://www.nhlbi.nih.gov/health/health-topics/topics/thcp  (last   visited 09/14/2015).

AO 72A
(Rev.8/8
2)

medication or receiving treatment for the condition, and the impairments are self-reported.  [R20].

In evaluating whether Plaintiff's severe impairments meet or equal a listing, the ALJ found that Plaintiff has mild restrictions in activities of daily living as Plaintiff is able to shower and dress, his friends help him with cooking and cleaning, and he is unable to stand for a long time.  [R21].  The ALJ also found that Plaintiff has moderate difficulties in social functioning as Plaintiff has alleged that he has difficulty forming social relationships to the point that he cannot keep a job and testified that he is fearful in large crowds.  The ALJ also found that Plaintiff has moderate difficulties in maintaining concentration, persistence or pace as Plaintiff indicated he has difficulty with memory, concentration, following instructions, and completing tasks.  The ALJ further noted that Plaintiff indicated that he was able to follow written instructions, but does not follow spoken instructions or handle stress or changes in routine well.  [*Id*].

With regard to the RFC, including Plaintiff's substance use disorder, the ALJ focused on Plaintiff's allegations and hearing testimony.  [R23].  The ALJ noted Plaintiff's alleged impairments and that Plaintiff reported panic attacks and suicidal thoughts.  He further noted that Plaintiff contends that he has numbness in his hands and fingers and has difficulty walking.  The ALJ stated that at the hearing Plaintiff

18

testified that he was indigent and homeless, but has a car.  Plaintiff also testified that he is unable to work due to high blood pressure and that he has swelling in his legs, has difficulty standing due to a previously broken bone in his knee, and that standing for even five minutes causes his knee to swell; however he can sit for about thirty minutes at a time and lift fifteen to twenty pounds.  The ALJ further noted that Plaintiff testified that he is unable to control his blood pressure with medication and that his medication makes him sleepy and subject to falling asleep at unpredictable times.  The ALJ noted that Plaintiff reported having a traumatic childhood in the foster care system where he was abused frequently, kept from attending school, and medicated during the day.  The ALJ also noted that Plaintiff testified that his psychological symptoms are the result of his childhood trauma.  The ALJ further noted that Plaintiff testified that he stopped using marijuana two or three weeks prior to the hearing; that Plaintiff experimented with LSD to help his depression, the last time being one month prior to the hearing; and Plaintiff testified to using heroin when he was younger and taking Oxycontin, but did not like the effects of either drug.  [*Id.*].

In evaluating Plaintiff's impairments if Plaintiff stopped the substance use, the ALJ found that Plaintiff would continue to have a severe impairment or combination of impairments due to hypertension, status post right knee fracture, and depression.

[R25].  The ALJ also found that Plaintiff would continue to have mild difficulties in activities of daily living and moderate difficulties in social functioning and maintaining concentration, persistence and pace.  [*Id*.].

In discussing the RFC finding if Plaintiff stopped the substance use, the ALJ discussed Plaintiff's medical record.  [R27-30].  Regarding Plaintiff's allegations of difficulty with sitting, standing, and walking due to knee and back pain, the ALJ noted that Plaintiff was seen at Grady Hospital in March 2010 during which visit x-rays of Plaintiff's knee revealed post open reduction internal fixation, with screws across the medial and lateral tibia plateau and moderate joint effusion. [R27].  The ALJ noted that the evidence shows that Plaintiff had a fracture in his right knee in November 2002 with reparative surgery performed at Grady and that Plaintiff alleges that he still has pain and swelling as a result of the injury.  Thus, the ALJ stated that the RFC limits Plaintiff to light exertional activity with limited climbing and the ability to sit/stand at will during the workday.  [*Id*.].

Regarding Plaintiff's allegations of uncontrolled hypertension including visual limitations, the ALJ noted that Plaintiff received treatment for hypertension at North DeKalb in July 2010 when Plaintiff reported that he had been off his blood pressure medications for the past two months and denied any visual loss.  [*Id*.].  The ALJ noted

that in September 2010, Plaintiff's symptoms were resolved after receiving medication. The ALJ further noted that in October 2011, Plaintiff presented to North DeKalb and was noted to have accelerated hypertension, poor compliance, multi-substance abuse and was also noted to be a poor historian and not cooperative. The ALJ observed that the emergency room report consistently showed that Plaintiff was non-compliant with blood pressure medications for the past four months and admitted to the use of marijuana, opiates and LSD. [*Id.*]. The ALJ further observed that Plaintiff was treated for hypertension at Piedmont Hospital's emergency room in November 2011 and February, May, August, and November 2012. [R27-28]. Finally, the ALJ noted that Plaintiff received treatment at Saint Joseph's Mercy Care Services from December 2012 through July 2013 for hypertension, that Plaintiff reported that he has adverse side effects from numerous medications to control his hypertension, and that he was repeatedly counseled on being compliant with his medication. [R28]. The ALJ stated that he accounted for Plaintiff's hypertension which Plaintiff alleges results in vision impairment, dizziness, headache and fatigue by limiting Plaintiff to avoid climbing ladders, ropes or scaffolds and avoid concentrated exposure to hazards. The ALJ further gave significant weight to the longitudinal evidence of record regarding Plaintiff's hypertension. [*Id.*].

21

Regarding Plaintiff's mental impairments, the ALJ noted that, although Plaintiff testified that he has thoughts of suicide, intake notes at Piedmont Hospital in November 2011 indicated that Plaintiff had not tried self-harm and was not determined to be a suicide risk patient. [*Id*.]. The ALJ further noted that treatment notes reflected that Plaintiff's depression is aggravated by conflict or stress, drug use, and traumatic memories. The ALJ stated that Plaintiff's symptoms and limitations due to depression are accounted for in the RFC which limits Plaintiff to unskilled work and to no more than occasional contact with others in the workplace. [*Id*.].

The ALJ noted that treatment notes in April 2012 indicated that Plaintiff exhibited drug-seeking behavior in which he demanded pain medication and asked for specific amounts of oxycodone; Plaintiff was escorted out of the hospital by security when was refused higher dosages of oxycodone. [*Id*.].

The ALJ discussed the consultative examination report provided by Dr. Johnson in February 2012, in which Dr. Johnson noted that Plaintiff completed range of motion maneuvers, moved stiffly during assessment, had a stiff but normal gait, and difficulty with tandem walking. [R29]. The ALJ also noted that Dr. Johnson reported that Plaintiff's hypertension was uncontrolled. The ALJ gave significant weight to Dr. Johnson's findings. [*Id*.].

22

The ALJ next discussed the consultative psychological examination report provided by Dr. Hamby in April 2012. [*Id.*].  The ALJ noted that Dr. Hamby reported that Plaintiff used marijuana three times a week and diagnosed Plaintiff with depressive disorder NOS and cannabis dependence.  The ALJ noted that Dr. Hamby opined that Plaintiff would be able to understand, remember, and carry out simple instructions, sustain attention to complete tasks, and have moderate difficulty relating to supervisors and co-workers. The ALJ further noted that Dr. Hamby indicated that Plaintiff's mental condition would be expected to improve if he received mental health treatment and that Plaintiff would experience additional improvement if he permanently and completely stopped all use of marijuana.  The ALJ gave significant weight to the opinion of Dr. Hamby.  [*Id.*].

The ALJ also acknowledged the third party function report provided in August 2012 by Plaintiff's close friend Sparrow Honeycutt, however the undersigned gave little weight to the opinion as it was inconsistent with the RFC.  [*Id.*].  The ALJ further gave significant weight to the state agency medical and psychological consultants. [R29-30].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274,

24

1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity

25

to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

If the ALJ determines that the claimant is disabled and there is medical evidence of a drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism ("DAA") is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a).  Under the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  To determine whether DAA is a material factor, the ALJ must determine whether the claimant would still be disabled if he stopped

26

using alcohol or drugs.  20 C.F.R. § 404.1535(b)(1).  To make this determination, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using alcohol or drugs and then determine whether any or all of the remaining limitations would be disabling.  20 C.F.R. § 404.1535(b)(2).  If the ALJ determines that the claimant's remaining limitations are disabling, then he is disabled independent of DAA and the ALJ must find that the DAA is not a contributing factor material to the determination of disability.  20 C.F.R. § 404.1535(b)(2)(ii).  If the ALJ determines that the remaining limitations are not disabling, then the ALJ must find that DAA is a contributing factor material to the determination of disability, and, therefore, the claimant is not disabled.  20 C.F.R. § 404.1535(b)(2)(i).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

27

of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

28

substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff raises two issues in this appeal: (1) the ALJ's determination that Plaintiff's substance use disorder materially contributed to his disability was not made in accordance with the regulations and is not supported by substantial evidence; and (2) the ALJ erred by incorporating a sit/stand option and a limitation that Plaintiff could adapt to change provided that change is introduced gradually in the RFC, as these are accommodations and the ALJ cannot rely on the VE because it is inconsistent with relevant legal standards and no explanation was prescribed for the discrepancy. [Doc. 11 at 6-8].

### A.   DAA

#### 1.   Arguments of the Parties

Plaintiff argues that the ALJ's determination that Plaintiff would not have a severe mental impairment if he stopped using drugs and alcohol is not supported by substantial evidence. [Doc. 11 at 8]. Plaintiff contends that the ALJ made findings

29

based on speculation about the effects of Plaintiff's drug use.  [*Id.*].  For example,

Plaintiff argues, the ALJ cited to current marijuana use, Plaintiff's past drug use, and

Plaintiff's drug seeking behavior where Plaintiff sought higher doses of pain

medication.  [*Id.*].  However, Plaintiff claims, there is no indication that Plaintiff

received the additional pain medications or that it resulted in the behavior and

limitations exhibited throughout the record.  [*Id.*].  Plaintiff also notes that the ALJ

relied on the consultative examiner's statement that cessation of marijuana would

improve his functioning, however the consultative examiner also acknowledged that

Plaintiff requires mental health treatment and diagnosed Plaintiff with depression as

well as bizarre behavior.  [*Id.*].  Moreover, Plaintiff argues, the consultative examiner

did not conclude that Plaintiff's functioning would improve to the point of ability to

work and that, to the contrary, the medical evidence and statement from Plaintiff's

friend show impairments and symptoms separate and apart from substance abuse.  [*Id.*].

In response, Defendant argues that the ALJ properly determined that Plaintiff's

DAA was material to the determination of disability, and that substantial evidence

supports his findings.  [Doc. 12 at 10].  Defendant cites to Dr. Hamby, who noted that

Plaintiff's condition would improve if he permanently and completely stopped using

marijuana.  [*Id.* at 10-11 (citing [R414])].  Defendant also cited to other medical

evidence that Defendant argues supports the ALJ's decision, including records that show a long history of substance addiction issues and drug-seeking behavior. [*Id*. at 11-12 (citing [R403, 426, 431, 438, 444, 445, 448, 1202, 1252, 1265-66, 1287, 1294, 1338])]. Moreover, Defendant argues that Plaintiff failed to meet his burden of proving that he would have been disabled if he stopped his substance abuse. [*Id*. at 12].

Plaintiff did not file a reply brief. [*See* Dkt.].

## 2.    Discussion

The Court finds substantial evidence supports the ALJ's determination that DAA was a contributing factor to Plaintiff's disability. The ALJ relied, in part, on the opinion of Dr. Hamby, who opined that Plaintiff was able to understand, remember and carry out simple instructions and to sustain his attention in order to complete simple tasks, had moderate difficult relating to supervisors and coworkers, and was at mild to moderate risk for psychiatric decompensation under stressful work conditions. [R414]. Dr. Hamby further opined that his condition would be expected to improve with mental health treatment and if Plaintiff permanently and completely stopped all use of marijuana. [*Id*.]. While Plaintiff argues that Dr. Hamby did not indicate that Plaintiff's functioning would improve to the point of an ability to work, Dr. Hamby's opinion was

31

based upon Plaintiff's then-level of functioning, even without improvement, which suggested that Plaintiff has the mental capability to function in the workplace with those limitations. This level of functioning appears to be a baseline which would only improve with mental health treatment and cessation of marijuana usage.

Dr. Hamby did not opine that Plaintiff's level of functioning was so deteriorated to the point where Plaintiff is unable to work. Moreover, Plaintiff does not argue that the limitations set out by Dr. Hamby were not incorporated in the RFC and the Court finds that the RFC accurately reflects the opinion and limitations set out by Dr. Hamby.

Plaintiff also argues that the medical evidence and statement from his friend shows impairments and symptoms separate and apart from substance abuse, however, Plaintiff fails to cite to any medical evidence which demonstrates that his impairments and symptoms are separate and apart from substance use, and Plaintiff does not challenge the ALJ's decision to assign little weight to the friend's statement.

Accordingly, the Court finds that substantial evidence supports the ALJ's determination that DAA was a contributing factor to Plaintiff's disability. Thus, the Court finds that this argument is not a basis to reverse and remand.

**B.      Accommodations**

**1.        Arguments of the Parties**

Next, Plaintiff argues that the sit/stand option and the gradual introduction of change are accommodations—as that word is defined in Social Security Ruling ("SSR") 11-2p[11]—that would need to be made by an employer. [Doc. 11 at 7]. Thus, Plaintiff argues, that this finding would preclude work and the VE cannot provide substantial evidence because it is inconsistent with relevant legal standards and no explanation was prescribed for the discrepancy. [*Id*.]. Moreover, Plaintiff argues that the evidence raises significant questions as to Plaintiff's ability to sustain work activities on a regular continuing basis. [*Id*.].

_____

[11]        According to the SSR,

Accommodations are practices and procedures that allow a person to complete the same activity or task as other people. Accommodations can include a change in setting, timing, or scheduling, or an assistive or adaptive device. . . . When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990.

SSR 11-2pII.D.1.a., e., 2011 WL 4055665, at *8, 9 (Sept. 12, 2011).

AO 72A
(Rev.8/8
2)

In response, Defendant argues that the ALJ properly relied on the VE's testimony. [Doc. 12 at 13-14]. Defendant argues that Plaintiff's reliance on SSR 11-2p is misplaced because that ruling specifically deals with assessing claims by young adults who are between the ages of 18-25. [*Id*. at 14]. Notwithstanding, Defendant argues, Plaintiff's argument fails because the RFC limitations of a sit/stand option and a need for gradual work changes are not accommodations. [*Id*.]. Defendant argues that the regulations allow for the ALJ to include these limitations in the RFC because the regulations require an ALJ to assess and incorporate into the RFC a claimant's ability to sit, stand, or walk, and to assess work pressures in a work setting. [*Id*. at 15 (citing 20 C.F.R. § 404.1545(b), (c))]. Moreover, Defendant argues that under SSR 11-2p, a claimant's ability to deal with changes in a routine work setting is a factor to be considered in the RFC. [*Id*. at 15-16 (citing SSR 11-2P, 2011 WL 4055665 at *14)].

## 2.    Discussion

Defendant has the better argument.   As noted by Defendant, SSR 11-2p specifically pertains to evaluating disability in young adults, ages 18 to 25. SSR 11-2p, 2011 WL 4055665 at *1-2.  As Plaintiff was 44 years old on the alleged onset date of disability, [R24], this SSR does not apply.  Even if it did, the Court also agrees with Defendant that the incorporation into the RFC and the hypothetical to the VE of a

AO 72A
(Rev.8/8
2)

sit/stand option and the gradual introduction of change are not accommodations under the ruling, but specific findings an ALJ must make when assessing and determining a plaintiff's RFC.  *See* SSR 11-2p, 2011 WL 4055665, at *14; 20 C.F.R. § 404.1545(b), (c).

Accordingly, the Court finds that substantial evidence supports the ALJ's RFC and step five determination.  Thus, Plaintiff's arguments on this point are not a basis for reversal or remand.

## VII.   CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in Defendants's favor.

**IT IS SO ORDERED and DIRECTED,** this the 15th day of September, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

35